IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIC MILTON LIVERING,** | : CIVIL ACTION NO. 1:20-CV-855 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **ROBERT KARNES,** *et al.*, | : |
| **Defendants** | : |

# MEMORANDUM

Plaintiff Eric Milton Livering ("Livering"), an inmate who was housed at all relevant times at the Lebanon County Correctional Facility, in Lebanon, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983 asserting that he was a protective custody inmate and was treated differently from general population female inmates in the facility. (Doc. 1). Named as defendants are warden Robert Karnes and deputy warden Tina Litz. Presently before the court is defendants' Rule 12(b) motion to dismiss. (Doc. 19). For the reasons set forth below, the court will grant defendants' motion.

## I.  Factual Background & Procedural History

Livering was housed in the protective custody block at the Lebanon County Correctional Facility. (Doc. 1 at 12). He alleges that inmates who are confined to the protective custody block do not have access to adequate legal resources because, before going to the law library, they must first research case law on a computer kiosk and request copies of cases from prison staff. (Id.) Livering also claims that protective custody male inmates do not receive the same privileges as

female inmates housed in general population.  (Id. at 12-13).  Specifically, he alleges that general population female inmates have access to a hot water pot and a television, they can attend the prison chapel and law library, and are allowed to leave their cells for most of the day.  (Id.)  Because Livering was confined to his cell block, he alleges that he was not afforded adequate exercise opportunities.  (Id. at 13).

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 19).  Livering failed to respond to defendants' motion and the time for responding has now passed.[1]  Therefore, the motion is deemed unopposed and ripe for resolution.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also

---

[1] Livering was directed to file a brief in opposition to defendants' motion and was admonished that failure to file an opposition brief would result in defendants' motion being deemed unopposed.  (Doc. 22) (citing M.D. PA. LOCAL RULE OF COURT 7.6).  See also (Doc. 6, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

#### A. Lack of Personal Involvement

Defendants move to dismiss all claims against them based on their lack of personal involvement in the alleged constitutional violations. (Doc. 20 at 3-4). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

It appears that Livering seeks to hold defendants Karnes and Litz liable based solely upon their responses to his grievances and appeals. (Doc. 1 at 4, 14-19). However, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Thus, insofar

4

as Livering's claims against the defendants are premised on their denial of inmate grievances, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. See Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

Additionally, to the extent that Livering attempts to hold defendants Karnes and Litz liable based on their respective supervisory roles of warden and deputy warden, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See Rode, 845 F.2d at 1207. Accordingly, insofar as Livering's claims against the defendants rely on a *respondeat superior* theory of liability, defendants are entitled to dismissal on this ground.

### B. First Amendment Access to the Courts Claim

Livering asserts that defendants denied him access to the courts by providing inadequate access to legal resources. (Doc. 1 at 12). In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Lewis v. Casey, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and

meaningful and must be freely exercisable without hindrance or fear of retaliation." Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted). Following Lewis, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  See Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit."  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

     Livering alleges that, as a protective custody inmate, he must initially conduct legal research using a computer kiosk in his cell block rather than going to the prison law library.  (Doc. 1 at 12-13).  He claims that inmate access to the kiosk is insufficient, and that he must request copies of any cases that he wishes to review. (Id.)  Livering has not asserted that he was prevented from pursuing a nonfrivolous legal claim or defense, or that he actually missed any deadlines in a pending case. In failing to establish actual injury or some legal loss, Livering fails to demonstrate that defendants' conduct imposed a substantial impact on him.  See Monroe, 536 F.3d at 205-06 (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy.'") (citation omitted). Consequently, the court will dismiss Livering's denial of access to the courts claim.

### C.      Equal Protection Claim

Livering next alleges that he was denied equal protection of the law because he was not treated similarly to general population female inmates.  (Doc. 1 at 12-13).  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST. amend. XIV; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental.  Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); see also Jean-Pierre v. Bureau of Prisons, 497 F. App'x 164, 168 (3d Cir. 2012).  If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest.  See Tillman, 221 F.3d at 423.

Livering claims that as a male inmate in protective custody, he had a reasonable expectation to be treated similarly as general population female

inmates. (Doc. 1 at 12-13). He asserts that females in general population have access to a hot water pot and a television, they can attend the prison chapel and law library, and are allowed to leave their cells during the day. (Id.) Livering claims that protective custody male inmates do not receive these same privileges. (Id.) However, protective custody inmates are not similarly situated to general population inmates, and the imposition of less favorable conditions on inmates in protective custody does not constitute denial of equal protection. See, e.g., Allgood v. Morris, 724 F.2d 1098 (4th Cir. 1984). Livering has thus failed to meet the threshold requirement of an equal protection claim because he did not allege differential treatment between himself and other similarly situated persons. Additionally, while Livering is not attempting to simply distinguish himself from other prisoners, but rather that he was treated differently from general population female inmates, he fails to plausibly allege that defendants purposefully discriminated against him. The court will grant defendants' motion to dismiss the equal protection claim.

## IV.     Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229,

235 (3d Cir. 2004)).  The claims against defendants are legally and factually flawed, and thus incurable.  Therefore, the court concludes that curative amendment would be futile.

## V.     Conclusion

The court will grant defendants' motion (Doc. 19) to dismiss.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       January 29, 2021